NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN PATRICK SLEDGE, INDIVIDUALLY AND AS NATURAL TUTOR ON BEHALF OF J. R. S. AND A. M. S., BRITTANY GAIL WARREN, INDIVIDUALLY,**
*Petitioners*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent*

---

2018-1919

---

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2012-079.

-------------------------------------------------------------

**BERNADETTE STOUTE JEANSONNE, INDIVIDUALLY AND AS NATURAL TUTOR ON BEHALF OF S. M. J., AND KALE DAVID JEANSONNE, KONNOR VICK JEANSONNE, AND KRISTOPHER JEANSONNE, INDIVIDUALLY,**
*Petitioners*

**v.**

## DEPARTMENT OF JUSTICE,
*Respondent*

————————————

2018-1966

————————————

Petition for review of a decision of the Bureau of Justice Assistance in PSOB Claim No. 2012-086.

————————————

Decided:  August 20, 2019

————————————

MONICA VELA-VICK, Phelps Dunbar LLP, Baton Rouge, LA, for petitioners.  Also represented by SHELTON DENNIS BLUNT.

KARA WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; JASON P. COOLEY, RAFAEL ALBERTO MADAN, Office of General Counsel, Office of Justice Programs, United States Department of Justice, Washington, DC.

————————————

Before PROST, *Chief Judge,* NEWMAN and CHEN, *Circuit Judges.*

PER CURIAM.

The claims for death benefits in these cases were brought under the Public Safety Officers' Benefits Act (PSOBA) of 1976, Pub. L. No. 94-430 (codified as amended at 34 U.S.C. §§ 10281–10288).  Bernadette Jeansonne and John Sledge (collectively, "Claimants") each appeal February 2, 2018, decisions by the Bureau of Justice Assistance (BJA) holding that Louisiana Department of Insurance

(DOI) Investigators Robert Jeansonne and Kimberly Sledge were not "law enforcement officers" under the PSOBA, and therefore did not meet the PSOBA's requirement for awards of death benefits to their survivors, i.e., the Claimants. Because the BJA's decisions are supported by substantial evidence and it properly applied the implementing regulation, 28 C.F.R. § 32.3, defining the term "law enforcement officer" in the PSOBA, we *affirm* the BJA's denials of benefits.

BACKGROUND

On June 7, 2011, DOI investigators Robert Jeansonne and Kimberly Sledge entered the offices of Melvin Lavergne, an insurance provider, to investigate complaints of insurance fraud. Jeansonne and Sledge previously investigated Lavergne for other fraud allegations, resulting in Lavergne's arrest by the Louisiana State Police. After discussing the current complaints and investigation with Lavergne and his business partner, Jeansonne and Sledge proceeded to collect and scan documents for the investigation. At this point, Lavergne went into his office, emerged with a rifle, and fatally shot Jeansonne and Sledge. After shooting Jeansonne and Sledge, Lavergne killed himself.

The families of Jeansonne and Sledge applied for benefits under 34 U.S.C. § 10284 of the PSOBA. The Public Safety Officers' Benefits (PSOB) office denied the claims, finding that neither investigator was a "law enforcement officer" under the PSOBA and implementing regulations. After holding a hearing, a Hearing Officer reached the same conclusion that neither Jeansonne nor Sledge's duties, as insurance fraud investigators, entailed any law enforcement authority.

Claimants then requested review by the Director of the BJA. The BJA Director issued its final agency determinations denying Claimants' claims for benefits. The BJA Director stated that "the evidence does not establish that, at the time of the fatal shooting, [Jeansonne and Sledge's]

duties and responsibilities included any of the various
types of legal authority and responsibility required by the
definition of 'involvement' in 28 C.F.R. § 32.3 to be consid-
ered [] a law enforcement officer for PSOB purposes." J.A.
5.[1]  The BJA Director based this conclusion on the official
job descriptions provided by the Louisiana Commissioner
of Insurance, testimony by various DOI staff that testified
about the roles investigators play in an insurance fraud in-
vestigation, and the 2011 Louisiana legislation that ex-
panded the scope of law enforcement officers under
Louisiana state law to include investigators.  Reviewing
the record, the BJA Director concluded that "[t]here is no
evidence that Fraud Investigators possessed both the legal
authority and responsibility . . . to arrest, apprehend, pros-
ecute, or adjudicate persons alleged to have violated or
found to have violated the criminal laws." J.A. 10.

We have jurisdiction under 34 U.S.C. § 10287.

DISCUSSION

A

On appeal, Claimants argue that the BJA Director mis-
applied the agency's regulation in finding that Jeansonne
and Sledge did not qualify as "law enforcement officers" un-
der 28 C.F.R. § 32.3.  Claimants alternatively contend that
the regulation is not entitled to *Chevron* deference because
it represents an unreasonable reading of what constitutes
a law enforcement officer under the PSOBA.

The PSOBA directs the BJA to pay a death benefit to
an eligible claimant if it is found that "a public safety of-
ficer has died as a direct and proximate result of a personal
injury sustained in the line of duty." 34 U.S.C. § 10281(a).
A "public safety officer" includes "an individual serving a

---

[1]     Unless otherwise noted, all J.A. citations are to the
joint appendix filed in the Jeansonne appeal.

public agency in an official capacity, with or without compensation, as a law enforcement officer." 34 U.S.C. § 10284(9)(A). The Act defines a law enforcement officer as "an individual involved in crime and juvenile delinquency control or reduction, or enforcement of the criminal laws . . . , including, but not limited to, police, corrections, probation, parole, and judicial officers." 34 U.S.C. § 10284(6). At the time of BJA's determination, PSOB regulations provided that "[a]n individual is involved in crime and juvenile delinquency control or reduction, or enforcement of criminal laws" *only if* he "has legal authority and responsibility to arrest, apprehend, prosecute, adjudicate, correct or detain . . . , or supervise (as a parole or probation officer), persons who are alleged or found to have violated the criminal laws."[2] 28 C.F.R. § 32.3.[3]

We review an agency's application of its own regulations to determine "(1) whether there has been substantial compliance with statutory requirements and provisions of implementing regulations; (2) whether there has been any arbitrary or capricious action by government officials involved; and (3) whether substantial evidence supports the

---

[2]   Claimants have not argued that Jeansonne or Sledge had duties related to "correct," "detain," or "supervise."

[3]   Although the regulation was amended in May 2018 to replace "legal authority and responsibility" with "legal authority or responsibility," the regulation's effective date was June 14, 2018, after the BJA Director's determination. Public Safety Officer's Benefits Program, 83 Fed. Reg. 22,367, 22,379 (Dep't of Justice May 15, 2018). Under the PSOBA, implementing regulations apply to matters "pending on, or filed or accruing after, the effective date specified in the regulations. 34 U.S.C. § 10287. As such, the language applying to these cases is the "legal authority and responsibility."

decision." *Hawkins v. United States*, 469 F.3d 993, 999 (Fed. Cir. 2006). In these cases, we review the denials of benefits to Claimants based on the BJA Director's application of the agency's regulation defining "law enforcement officer" in the PSOBA.

The BJA Director was presented with uncontested evidence of Jeansonne and Sledge's official duties, including the statement of "Duties and Responsibilities" of a DOI investigator and testimony from current and former DOI employees. According to the "Duties and Responsibilities," Jeansonne and Sledge's official duties included "[c]onduct[ing] the most complex and highest level of investigations in the Department of Insurance; gather[ing] and assembl[ing] evidence for trial or hearings," "[c]onduct[ing] interviews, undercover operations, research, . . . surveillance activities gathering evidence of violations," "[t]estif[ying] in administrative, civil, criminal, or other proceedings concerning investigative finds," and more. J.A. 54.

Paul Boudreaux, a former director at the DOI, testified before the BJA and substantially supported the BJA Director's findings. For example, Boudreaux stated that "[i]f it's producer fraud, then [DOI would] handle the administrative aspect of it. If it's criminal, producer or otherwise, [DOI would] refer it to State Police." J.A. 6. Boudreaux's testimony further detailed the collaborative nature of Jeansonne and Sledge's roles with criminal investigations and the State Police, but the testimony also clearly showed that the roles delineated in 28 C.F.R. § 32.3 (e.g., arrest, apprehend, prosecute, etc.) are performed by the State Police and Attorney General rather than the DOI investigators. J.A. 6–7.

The implementing regulation creates a clear framework for determining which positions meet the "law enforcement officer" requirement and the BJA Director properly applied that framework here based on the

evidence presented. Claimants argue that the BJA Director inappropriately focused on a law enforcement officer's arrest power. Appellant's Br. at 28. However, this focus is appropriate because it is one of the regulation's specified responsibilities to qualify as a law enforcement officer. *Cassella* shows that the "arrest" and "apprehend" categories ask whether a person has the power to arrest or otherwise stop a crime in progress. *See Cassella v. United States*, 469 F.3d 1376, 1384 (Fed. Cir. 2006) ("Mrs. Cassella did not have the power to arrest the violator of a traffic crime or to stop a traffic crime in progress."). In *Cassella*, the claimant attempted to claim that Cassella had "indirect arrest power," i.e., the Special School Zone Police Officer could gather information on and report criminal violations to other police officers so that those police officers could arrest the perpetrator. *Id.* at 1380. We held this indirect role insufficient to establish Cassella as a law enforcement officer. *Id.* at 1384. The duties of a DOI investigator have a similar shortcoming with respect to 28 C.F.R. §32.3.

As one of the categories in the BJA's regulation, the BJA Director correctly analyzed whether Jeansonne and Sledge had a duty or authority to arrest or apprehend persons. The evidence points to the fact that Jeansonne and Sledge were required to have police present any time an arrest was necessary. J.A. 432. Despite Claimants' attempt to insert investigating criminals into the "apprehend" category, Jeansonne and Sledge did not have the power to stop a crime in progress. *See, e.g.*, J.A. 494–98; Appellant's Br. at 29. If they found evidence of criminal activity, the next step for them was to report it to the police. J.A. 432. Although Jeansonne and Sledge may still have been involved in the investigation, the arrest, i.e. the stopping of the crime, was performed by the police. *Id.* In view of *Cassella*, this evidence supports the BJA Director's determination that Jeansonne and Sledge's duties did not fall within the arrest or apprehend categories. J.A. 8.

With regard to "prosecute," the BJA Director considered the evidence and determined that Jeansonne and Sledge's duties did not fall within the prosecute category. We find that the BJA Director properly considered the DOI investigator's role in a criminal prosecution, finding that Jeansonne and Sledge's roles were limited to providing evidence and testifying at trial. J.A. 7–8, 431–32. This evidence supports the BJA Director's conclusion that "contribution to criminal prosecutions is not sufficient to establish status as a law enforcement officer for purposes of the PSOB Act." J.A. 8.

Thus, substantial evidence supports the BJA Director's conclusion that Jeansonne and Sledge's duties did not fall within any of the categories set forth in 28 C.F.R. §32.3.

Claimants argue that the BJA Director's decision was arbitrary and capricious because a DOI investigator's duties "overlap" with those of police officers. For example, Claimants explain that DOI investigators work in a task force with the Louisiana State Police and Louisiana Attorney General to investigate criminal insurance fraud. As such, the investigators perform duties that police officers also perform, such as investigating crime, going undercover, serving cease-and-desist letters, and more. However, overlap of certain duties with police officers does not make an official a "law enforcement officer." Indeed, we have explicitly found that some of the duties typically attributed to police officers do not qualify that official as a law enforcement officer under PSOBA. *See Cassella*, 469 F.3d at 1384 (finding that delegating traffic control powers to a school zone traffic officer did not qualify the officer as a "law enforcement officer"). The BJA's regulation specifically lists the duties that qualify an official as a "law enforcement officer," and the BJA Director's application of the regulation was not arbitrary or capricious and was supported by substantial evidence when finding that Jeansonne and Sledge's official duties did not meet any of those categories. 28 C.F.R. § 32.3.

The BJA Director's determination that serving cease-and-desist letters and conducting administrative proceedings did not constitute arrest, apprehension, or prosecution is not arbitrary or capricious and is supported by substantial evidence.  Our precedent interpreting the PSOBA is clear that the duty must involve criminal law.  *Hawkins*, 469 F.3d at 1000–03; *Cassella*, 469 F.3d at 1384.  Serving a cease-and-desist letter is derived from the DOI's administrative powers to enforce the civil law.  *See* J.A. 557.  Claimants argue that the cease-and-desist letters function similar to a warrant and have the effect of stopping criminal activity.  Appellant's Br. at 27.  Regardless, our precedent recognizes a key distinction between criminal and civil law for PSOBA purposes and cease-and-desist letters are for the enforcement of civil law.  *See* J.A. 557.  Conducting administrative proceedings is also an enforcement of the civil law.  *See, e.g.*, J.A. 431–32 (distinctly separating the actions taken for administrative and criminal proceedings).

Claimants further criticize the BJA Director for not giving deference to the Louisiana law that was amended to include DOI investigators as law enforcement officers under state law.  Appellant's Br. at 32–38.  The law was passed after the deaths of Jeansonne and Sledge and was specifically designed to grant the investigators' families state benefits.  *Id.*  Claimants rely on *Winuk v. United States*, 77 Fed. Cl. 207 (2007), to assert that the BJA Director should have deferred to this Louisiana statute.  Appellant's Br. at 33.  But the determination of whether the facts establish an official as a "law enforcement officer" under the PSOBA is a conclusion of law based on federal law, not state law.  *Cf. Amber-Messick v. United States*, 483 F.3d 1316, 1325 (Fed. Cir. 2007) ("[W]e find unpersuasive Mrs. Amber–Messick's contention that the fact she received benefits under the Pennsylvania Emergency Law Enforcement Personnel Death Benefits Act supports her claim under PSOBA.").

*Winuk* is not persuasive in these cases. First, *Winuk* addressed a special provision of the PSOBA "allowing for automatic payment of benefits to the survivors of public safety officers who were injured or died in the line of duty in relation to the September 11, 2001 terrorist attacks." *Winuk*, 77 Fed. Cl. at 214. This "automatic payment" was triggered when a public agency certified that an official was a public safety officer injured or killed in connection with the September 11, 2001, terrorist attacks. *Id.* While *Winuk* included a state statute, the statute only served as the certification required to trigger the automatic payments under the special provision of the PSOBA. *Id.* at 221.

The BJA Director here, however, was not bound by the special provision. The BJA Director properly considered whether DOI investigators qualify as law enforcement officers *under the PSOBA*, and determined that the Louisiana statute's inclusion of duties, such as "conducting investigations . . . or collecting evidence" went beyond the scope of the PSOBA and 28 C.F.R. § 32.3, which do not include such duties. J.A. 9–10.

There is no evidence that the BJA Director has applied this framework in a piecemeal way. Rather, the BJA has enumerated the responsibilities required to qualify as a "law enforcement officer," and the record before us shows that the BJA Director properly applied that framework. The BJA Director's Determinations were therefore not arbitrary or capricious, and were supported by substantial evidence because none of Jeansonne and Sledge's duties fell under the categories set out in 28 C.F.R. § 32.3.

## B

We also find unpersuasive Claimants' arguments that the BJA's interpretation of "law enforcement officer" is unreasonable. When the parties challenge an agency's interpretation of a statute, such as the phrase "law enforcement officer," we proceed with the two-step *Chevron* analysis.

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). We first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If "Congress either had no intent on the matter, or [] Congress's purpose and intent is unclear," we consider whether the agency's interpretation is based on a permissible construction of the statutory language at issue. *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000); *see also Chevron*, 467 U.S. at 843. For the second step, "the court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction." *Chevron*, 467 U.S. at 843 n.11. So long as the agency's construction of the term in the statute is reasonable, *Chevron* "requires a federal court to accept the agency's construction . . . even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

The parties agree that Congress's intent regarding the term "law enforcement officer" for these cases is ambiguous. *See* Appellant's Br. at 21 ("Congress has not specifically spoken to this precise issue."). For purposes of these cases, we accept the parties' contention that the statute is unclear as to whether an insurance fraud investigator qualifies as a "law enforcement officer."

But first we note that, at least based on the current record, this appears correct. The PSOBA defines a law enforcement officer as "an individual involved in crime . . . control or reduction, or enforcement of the criminal laws . . . including, but not limited to police, corrections, probation, parole, and judicial officers." 34 U.S.C. § 10284. Any individual employed by a police department or another agency who assists police officers in the performance of their duties, directly or indirectly, could be regarded in a broad sense as "involved in" crime control or reduction. But our precedent makes clear that a law enforcement officer must be "obligated to fight crime or perform criminal law

enforcement duties." *Hawkins*, 469 F.3d at 1003; *Cassella*, 469 F.3d at 1384 (same). No matter how crucial many individuals' jobs are to the police department, other agencies, or criminal law enforcement as a whole, not every one of those employees fights crime or performs criminal law enforcement under the PSOBA. *See Cassella*, 469 F3d at 1379–86. While the PSOBA provides a non-exclusive list of exemplary officials ("police, corrections, probation, parole, and judicial officers") that qualify as "law enforcement officers," the statute does not explain which duties make these officials "law enforcement officers." Congress's intent is therefore unclear with regard to what duties qualify an individual as a law enforcement officer, and we proceed to step 2 of the *Chevron* analysis.

Based on the record before us and our prior caselaw, we find 28 C.F.R. § 32.3 reasonable. Claimants argue that the regulation should include investigative authority as an additional category of responsibility to the definition of "law enforcement officer," beyond the power to "arrest, apprehend, prosecute, adjudicate, correct or detain" or "supervise." Appellant's Br. at 18–20, 27. Although Claimants' proposal may be a reasonable interpretation of the PSOBA, Claimants were required to show why the actual regulation was unreasonable. Otherwise, *Chevron* "requires a federal court to accept the agency's construction . . . even if the agency's reading differs from what the court believes is the best statutory interpretation." *Nat'l Cable & Telecomms.*, 545 U.S. at 980. Here, the regulation's itemized responsibilities, including arrest, apprehend, and adjudicate authority, are entirely consistent with the statutory language, as well as an apt description of the responsibilities performed by the officials identified in the statute as being law enforcement officers, including police officers, parole officers, and judicial officers. We recognize that Jeansonne and. Sledge were tragically killed while performing their duties as insurance fraud investigators and those duties assist the police

department in its efforts to fight crime. Yet Claimants have not shown why drawing the line at the duties listed in the BJA's implementing regulation is unreasonable. Accordingly, *Chevron* requires us to give deference to the BJA's interpretation.

### CONCLUSION

For the foregoing reasons, the BJA Director's Determinations denying benefits under the PSOBA to Claimants are

### AFFIRMED

No costs.